Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiff
ELVIRA CHEGARNOV

# UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| ELVIRA CHEGARNOV,<br><br>          Plaintiff,<br><br>v.<br><br>OREGON HEALTH AND SCIENCE UNIVERSITY, A Public Corporation and Governmental Entity; WAYNE MONFRIES, An Individual; RUTH BEYER, An Individual; MAHTAB BRAR, An Individual; JAMES A. CARLSON, An Individual; DANNY JACOBS, An Individual; SUSAN KING, An Individual; CHAD PAULSON, An Individual; SUE STEWARD, An Individual; STEVE ZIKA An Individual; and DOES 1 THROUGH 50, Inclusive,<br><br>          Defendants | Case No.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND ORS 659A.030(1)(a); AIDING AND ABETTING EMPLOYMENT DISCRIMINATION [ORS 659A.030(1)(g)]; AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff ELVIRA CHEGARNOV hereby alleges as follows:

## PARTIES

1.      Plaintiff is, and at all times relevant herein was, a senior research assistant formerly employed by Defendant OREGON HEALTH AND SCIENCE UNIVERSITY ("OHSU") for nearly 15 years, from June 2007 until December 2, 2021.

2.      Plaintiff also is, and at all times relevant herein was, a practicing Christian and thus a member of a class of employees protected under Title VII of the federal Civil Rights Act of 1964 ("Title VII").  As permitted under Or. Admin. R. 333-019-1010(3)(a), Plaintiff sought from Defendant OHSU a religious exception from the State of Oregon's requirement that all healthcare workers in the state be vaccinated against COVID-19.  Having prayerfully considered the matter, Plaintiff objected to receiving a COVID-19 vaccine because the manufacturers of all such vaccines then available in the United States at or near the time of the events giving rise to this case used cells from aborted babies in the production of the vaccines.  Plaintiff held a sincere religious conviction that "receiving the [COVID-19] vaccination into my body is an indirect engagement and participation in abortion" that would violate her religious beliefs concerning the sanctity of life in the womb and defile her body in disobedience to God.

3.      Defendant OHSU is, and at all times herein was, a public corporation and governmental entity performing governmental functions and exercising governmental powers, as indicated under Or. Rev. Stats. § 353.020.  OHSU is, and at all times relevant herein was, an employer as defined by Title VII.  OHSU is openly pro-abortion, and its Vaccine Exemption Review Committee (the "VERC") openly expressed hostility toward the religious of views of certain employees who sought religious exemptions from the COVID-19 vaccination requirement,

including those of Plaintiff, declaring that those beliefs were unworthy of a religious exception.

4.      Defendants WAYNE MONFRIES ("MONFRIES"), RUTH BEYER ("BEYER"), MAHTAB BRAR ("BRAR"), JAMES A. CARLSON ("CARLSON"), DANNY JACOBS ("JACOBS"), CHAD PAULSON ("PAULSON"), SUE STEWARD ("STEWARD"), and STEVE ZIKA ("ZIKA," and collectively with MONFRIES, BEYER, BRAR, CARLSON, JACOBS, PAULSON, and STEWARD the "Board Defendants") all serve, and at all times herein served, in various roles on Defendant OHSU's Board of Directors. Defendant JACOBS is also, and at all times herein was, OHSU's president and the only member of OHSU's executive team to serve on OHSU's board.  The Board Defendants are, and at all times relevant herein were, directly responsible for establishing OHSU's institutional strategy and policy concerning religious exemptions from COVID-19 vaccinations for OHSU's employees that the VERC was responsible for administering, including determining which religious beliefs were worthy of exemptions and which were not.

5.      The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiff, who therefore sues said Defendants under such fictitious names.  Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiff thereby, as herein alleged.  The DOES include members of the VERC, who were directly responsible for making the decision to deny Plaintiff a religious exemption in violation of her constitutional rights.  Plaintiff will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

6.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

7.      This Court has jurisdiction over all Defendants pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the constitution and laws of the United States.

8.      This Court may award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57; the requested injunctive relief pursuant to 42 U.S.C. § 2000e-5(g) and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

## VENUE

9.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

10.     Venue is proper in the Court's Portland Division because the events giving rise to this Complaint occurred in the County of Multnomah and all agents, employees, or other persons working for, or in concert with, Defendant OHSU with regard to the events giving rise to this case are located in, employed in, and/or residents of the County of Multnomah.

## GENERAL ALLEGATIONS

11.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

12.     OHSU is Oregon's only public medical school and one of the few state-run universities in the United States devoted exclusively to educating doctors, nurses, pharmacists, and other healthcare professionals.  OHSU operates multiple hospitals in the Portland area in accordance with its healthcare-centered educational and clinical missions.

13.    OHSU is also openly in favor of abortion, which ends the life of an unborn child *in utero*.  In fact, on June 24, 2022 – the same date on which the Supreme Court overturned *Roe v. Wade*, the 1972 decision that made abortion legal nationwide, and declared that because there is no federal constitutional right to abortion, states are now free to decide for themselves whether abortion will be lawful within their borders – OHSU issued a press release headlined "Abortion Is Essential Healthcare" and affirmed its commitment to providing abortions and related services.  *See* Attached **Exhibit "A"** [a copy of said press release].[1]

14.    The Board Defendants serve in the following roles on OHSU's governing board:

      a.  MONFRIES – Chair

      b.  BEYER – Vice Chair

      c.  CARLSON – Senior Advisor

      d.  JACOBS – University President

      e.  KING, PAULSON, and ZIKA – Members

      f.  BRAR – Student Representative

15.    The Board Defendants are, and at all times relevant herein were, collectively responsible for establishing policies and protocols concerning the vaccination of OHSU's students and employees against COVID-19, which involved a virus that had a survival rate exceeding 99 percent.

16.    In August 2021, roughly 18 months after COVID-19 first arrived in Oregon, the Oregon Health Authority ("OHA"), pursuant to an executive order from Oregon's then-governor, Kate Brown, enacted an administrative rule (the

---

[1] Ironically, the press release also declares OHSU's commitment "to ensuring a ***respectful, welcoming and _inclusive_ place** to learn, **_work_** and receive care for all people regardless of gender, race, **_religion_** and sexual orientation" (emphasis added).  As the facts stated herein indicate, OHSU has failed to live up to this stated commitment.

"Vaccine Mandate" or the "Mandate") requiring healthcare workers to be vaccinated against COVID-19 by October 18, 2021.  *See* Or. Admin. R. 333-019-1010.  However, the OHA's Vaccine Mandate allowed healthcare workers to seek, and the hospitals, clinics, and other organizations who employed them to grant, religious exemptions from the vaccination requirement.  *Id.*, subsections (3)-(4).

17.    The OHA's Mandate also expressly states that "[n]othing in this rule is intended to prohibit schools or school-based programs … from … ***Complying with Title VII of the Civil Rights Act, and state law equivalents***, for individuals ***unable*** to be vaccinated due to … a sincerely held religious belief."  Or. Admin. R. 333-019-1010(5)(a) (emphasis added).

18.    In accordance with the OHA's Mandate, OHSU required all of its employees to either be vaccinated against COVID-19 or be granted a religious or medical exception by October 18, 2021.  However, OHSU flat-out warned Plaintiff and other employees that the VERC "expects that very few of the submitted requests for religious exemptions will be approved."  *See* Attached **Exhibit "B"** [an e-mail from OHSU in which OHSU declares, "Narrow exceptions process will help keep OHSU and the community safe"].

19.    Plaintiff is, and at all times relevant herein was, a senior research assistant who worked for OHSU for nearly 15 years, from June 2007 until December 2, 2021.

20.    For approximately 10 years, starting in 2010, Plaintiff worked remotely one to two days per week.

21.    After Gov. Brown declared a state of emergency in Oregon in response to COVID-19's arrival in March 2020, Plaintiff began working remotely full-time.  She did so for the remainder of her tenure at OHSU.

22.    Plaintiff was qualified to serve in her position and was an exemplary employee throughout her tenure at OHSU.  In fact, Plaintiff was promoted multiple

times during her 15-year tenure and even won her division's Employee of the Year award in 2011.

23.    Plaintiff is also, and at all times relevant herein was, a practicing Christian who opposes abortion on religious grounds, as she believes life begins in the womb and that, accordingly, abortion is the taking of a human life – i.e., murder, which the Bible explicitly prohibits.  *See* **Exhibit "C"** [a copy of Plaintiff's religious exemption request].

24.    When researching the COVID-19 vaccines currently available in the United States at the time the OHA issued its Vaccine Mandate, Plaintiff discovered that the vaccines' manufacturers used cells from aborted babies either in the testing and development of the vaccines or in the vaccines themselves.

25.    Based on much prayer and Bible study, Plaintiff determined that she was unable, in accordance with Christian principles, to take a COVID-19 vaccine. Accordingly, as allowed under Or. Admin. R. 333-019-1010(3)(a), on or about September 13, 2021, Plaintiff submitted a religious exception request to OHSU. *See* Ex. "C."  Plaintiff submitted her request one week before OHSU's imposed deadline of September 20, 2021.

26.    In her religious exception request, Plaintiff provided multiple reasons why her faith prohibited her from taking a COVID-19 vaccine.  *See* Ex. "C." Plaintiff extensively backed up her assertions with quotations from Scripture.  *Id.*

27.    The religious beliefs Plaintiff holds, and at all times rherein held, that render her unable to take a COVID-19 vaccine include the following [*see* Ex. "C"]:

       a.    "I believe that innocent life is sacred to God, from conception, to birth, to natural death.  COVID-19 vaccines use fetal cell lines in their development, test efficacy/proof of concept, and/or production/manufacturing";

b. "The presence of and use of immortalized human cell lines taken against the will of the person(s) aborted having been used in the development of the vaccinations cause my firm belief that receiving the vaccination into my body is an indirect engagement and participation in abortion.  According to the Bible, this is morally compromising (Exodus 20:13, Exodus 21:22-25, Jeremiah 1:5, Psalm 139:13-16)"; and

c. "This belief is concretely held and poses a direct conflict to my faith and moral obligations and adherence as a Christian."

28.     On October 5, 2021, OHSU notified Plaintiff via e-mail that the VERC had rejected her religious exception request.  A copy of OHSU's notice of rejection is attached hereto as **Exhibit "D."**

29.     In denying Plaintiff's religious exception request pursuant to policies established by the Board Defendants, the VERC made no assertion that OHSU could not accommodate her sincerely held religious beliefs due to undue hardship. *See* Ex. "D."  Rather, the VERC deemed several religious beliefs to be unworthy of accommodation.  Among those beliefs was "an objection to the vaccine on the basis of fetal cell concerns, in the vaccines or in testing and development." *See* Ex. "D."  Plaintiff held such a religious objection. *See* Ex. "C."

30.     The VERC's rejection e-mail also stated in boldfaced letters, "OHSU values you and hopes you will consider getting vaccinated in order to remain an OHSU member." *See* Ex. "D."  This statement, at best, ignores or demonstrates an extreme lack of sensitivity toward the religious convictions that moved Plaintiff to seek a religious exception in the first place – convictions that no true religious adherent, including Plaintiff, could abandon, even if it meant keeping her job.  At worst, the statement demonstrates hostility toward beliefs like Plaintiff's by pressuring them to choose between their sincerely held religious convictions and

the promise of steady employment – a choice Title VII and the First Amendment explicitly prohibit government employers from requiring their employees to make.

31.    Attached hereto as **Exhibit "E"** is a copy of a document that OHSU circulated to its employees essentially declaring that religious exception requests rooted in concerns about manufacturers' use of cells from aborted babies would be automatically rejected.  In the document, OHSU effectively asserts that because several high-profile religious organizations issued public statements approving the use of COVID-19 vaccines despite their connection to abortion, OHSU employees who belonged to those organizations' faiths had no reason not to get vaccinated.

32.    OHSU not only did not engage in a good-faith, interactive exploration of potential accommodations that would have allowed Plaintiff to continue working despite not having received a COVID-19 vaccine, as Title VII requires, OHSU actively refused to even consider engaging in such an interactive exploration: After OHSU denied her religious exception request, Plaintiff reached out to the VERC multiple times via e-mail to discuss her situation, offering to provide more evidence of her sincerely held religious beliefs and practically begging the VERC to reconsider its decision.  Every time, Plaintiff received an automatic response saying that the VERC's decision was final.

33.    Accommodations that would have allowed Plaintiff to continue working despite not having received a COVID-19 vaccine were available.  In fact, OHSU could easily have accommodated Plaintiff by allowing her to continue working remotely, as she had done for approximately 18 months prior to her placement on unpaid leave on or about October 18, 2021.  By working remotely, Plaintiff would have posed no danger to OHSU's other employees or patients due to being unvaccinated.

34.    Adding insult to Plaintiff's injury was that Plaintiff's cousin, an OHSU employee who shares the same faith and worked on the same team as

Plaintiff, was granted a religious exception by OHSU approximately 6½ weeks after OHSU denied Plaintiff's religious exception request.  The fact that OHSU was able to accommodate Plaintiff's cousin – who remains employed at OHSU as of this writing – is further proof of the availability of reasonable accommodations that would have enabled Plaintiff to keep working.

35.    OHSU ultimately fired Plaintiff on or about December 2, 2021.  A copy of Plaintiff's termination letter is attached hereto as **Exhibit "F."**

36.    As of this writing, Plaintiff is employed.  However, she is earning significantly less money than she made at OHSU.

37.    Plaintiff has also had significant difficulty maintaining employment due to the depression and emotional distress stemming from the trauma she suffered after OHSU fired her.  Plaintiff has had to leave two jobs and turn down multiple offers for smaller freelance jobs for reasons related to her mental health.

38.    Worse than that, because she lost her job with OHSU, Plaintiff was unable to afford mental health services and was unable to trust her healthcare provider of 15 years – which, incidentally, was also OHSU.

39.    The Court should note that when reviewing Plaintiff's case, the Equal Employment Opportunity Commission ("EEOC") found discrimination on OHSU's part.  A true and correct copy of the EEOC's findings is attached hereto as **Exhibit "G."**

40.    As a condition of filing the herein lawsuit, Plaintiff has obtained a right-to-sue letter from Oregon's Bureau of Labor & Industries.  A true and correct copy of that letter is attached hereto as **Exhibit "H."**

41.    Attached hereto as **Exhibit "I"** is a printout from the website TimeandDate.com showing when the 90-day statute of limitations set forth in Plaintiff's right-to-sue letter is set to expire.  Plaintiff has attached this printout hereto as proof that she has timely filed this lawsuit.

**FIRST CAUSE OF ACTION:**
**Violation of Title VII – Failure to Accommodate**
**[42 U.S.C. § 2000e-2]**
**Against Defendant OHSU**

42.     Plaintiff refers to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

43.     Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

44.     For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

45.     Defendant OHSU is, and at all times relevant herein was, an employer as defined by Title VII.

46.     The term "religion," for Title VII's purposes, "includes **_all_** aspects of religious observance and practice, **_as well as belief_**[.]" 42 U.S.C. § 2000e(j) (emphasis added).

47.     As a Christian, Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

48.     Plaintiff holds a sincere religious belief that due to COVID-19 vaccine manufacturers' use of cells from aborted babies in the production of the vaccines, "receiving the vaccination into my body is an indirect engagement and participation in abortion," which she considers to be murder.  *See* Ex. "C."

49.     Plaintiff's bona fide religious belief conflicted with her employment-related duty to receive a COVID-19 vaccine.  *See* Ex. "C."

50.     Plaintiff informed her employer, Defendant OHSU, of the conflict between her religious beliefs and her employment-related duties.  *See* Ex. "C."

51.     Defendant OHSU subjected Plaintiff to discriminatory treatment –
first by declaring her beliefs unworthy of a religious exception, then by placing her
on unpaid leave on or about October 18, 2021, and finally by firing her on
December 2, 2021.  *See* Exs. "D"-"F."

52.     Defendant OHSU made no attempt to accommodate Plaintiff's bona
fide religious belief, as Title VII requires.

53.     Defendant OHSU made no assertion to Plaintiff that OHSU would
incur undue hardship by accommodating Plaintiff's beliefs.  OHSU simply
threatened Plaintiff with termination of employment if she would not get
vaccinated, thereby coercing her to choose between abiding by her sincerely held
religious beliefs and remaining employed.

54.     Defendant OHSU could, and should, have easily accommodated
Plaintiff's sincere religious beliefs by allowing Plaintiff to continue working
remotely.  OHSU offered no accommodations to Plaintiff, opting to take adverse
employment action against her instead.

55.     Religious discrimination is truly what motivated Defendant OHSU to
get rid of Plaintiff, any assertion by OHSU to the contrary notwithstanding.

56.     Based on the foregoing, Defendant OHSU has discriminated against
Plaintiff in violation of Title VII.

<u>SECOND CAUSE OF ACTION:</u>
**Violation of State Law Prohibiting Religious Discrimination**
**[ORS 659A.030(1)(a)]**
**Against Defendant OHSU**

57.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as
though fully set forth herein.

58.     Like Title VII, Or. Rev. Stats. § 659A.030(1)(a) prohibits employers
from refusing to employ an individual on the basis of that individual's religion.

59.     Because Oregon's state law prohibiting employers from discriminating on the basis of religion is modeled after Title VII, and because the analysis for religious discrimination claims under both statutes is identical, Plaintiff declines to restate the facts as set forth in her first cause of action, as those facts are already incorporated as though fully set forth herein.

60.     For purposes of both Or. Admin. R. 333-019-1010, which specifically concerns healthcare workers, and Or. Rev. Stats. § 659A.030(1)(a), an intern qualifies as an employee.  *See* Or. Admin. R. 333-019-1010(2)(f) and ORS §§ 659A.001(4)(b) and 659A.350(1).

61.     Under 42 U.S.C. § 2000e-7, nothing in 42 U.S.C. § 1981a(b)(3), which caps the amount of non-pecuniary and punitive damages that can be awarded to Plaintiff, "shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State[.]"  In other words, an Oregon jury is free to exceed any applicable federal dollar limit in accordance with Oregon law.

62.     Under Oregon law, a jury may award up to $500,000 in noneconomic damages.  *See* Or. Rev. Stats. § 31.710(1).  Oregon law defines "noneconomic damages" to include "subjective, nonmonetary losses, including but not limited to … mental suffering [and] emotional distress[.]"  Or. Rev. Stats. § 31.705(2)(b).

63.     Plaintiff has endured mental suffering and emotional distress due to Defendant OHSU's unlawful discrimination against her.

64.     Or. Rev. Stats. § 659A.885(3) allows for punitive damages against employers such as Defendant SPS who violate Or. Rev. Stats. § 659A.030(1)(a). Oregon law places no cap on punitive damages.

65.     As required under the Oregon Tort Claims Act, Plaintiff has provided notice to Defendant OHSU of its violation of Or. Rev. Stats. § 659A.030(1)(a).

*See* Attached **Exhibit "J"** [a copy of an e-mail and an accompanying letter sent to OHSU's general counsel on October 11, 2022].

66.    Based on the foregoing, in addition to violating Title VII, Defendant SPS has violated ORS 659A.030(1)(a).

**THIRD CAUSE OF ACTION:**
**Aiding and Abetting Religious Discrimination by an Employer**
**[ORS 659A.030(1)(g)]**
**Against the Board Defendants and DOES 1-50**

67.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

68.    Or. Rev. Stats. § 659A.030(1)(g) prohibits any person from aiding and abetting an employer from engaging in employment discrimination.

69.    The Board Defendants are, and at all times relevant herein were, directly responsible establishing Defendant OHSU's institutional strategy and policy concerning religious exemptions from the OHA's Vaccine Mandate for OHSU's students and employees, including determining which religious beliefs were worthy or unworthy of exemption from the OHA's Vaccine Mandate.

70.    The VERC's members are, and at all times relevant herein were, responsible for enforcing policy established by the Board Defendants concerning exemptions from the OHA's Vaccine Mandate, including telling those who sought religious exemptions that their beliefs were unworthy of accommodation.

71.    In determining that religious beliefs concerning the use of cells from aborted babies in the production of COVID-19 vaccines were unworthy of accommodation, the Board Defendants facilitated the withdrawal of Defendant OHSU's offer of a pharmacy internship to Plaintiff.  The Board Defendants did this knowing that it was unlawful for OHSU, as Plaintiff's prospective employer, to engage in religious discrimination against Plaintiff.

72.    In their roles as members of Defendant OHSU's VERC, Defendants DOES 1-50 – whose identities have yet to be determined, and whom Plaintiff intends to add as a Defendant after learning their identities through discovery – acted in concert with, or gave substantial assistance to, OHSU to unlawfully discriminate against Plaintiff on account of Plaintiff's religion.  Defendants DOES 1-50 did this knowing that it was unlawful for OHSU, as Plaintiff's prospective employer, to engage in religious discrimination against Plaintiff.

73.    Because Defendant OHSU carried out its religious discrimination against Plaintiff with the assistance of the Board Defendants and Defendants DOES 1-50, the Board Defendants and DOES 1-50 should be held individually and personally liable for their conduct.

**FOURTH CAUSE OF ACTION:**
**Violation of Constitutionally Protected Freedom of Religion**
**[U.S. Const. amend. I; 42 U.S.C. § 1983]**
**Against the Board Defendants and DOES 1-50**

74.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

75.    Under 42 U.S.C. § 1983, anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

76.    Under 42 U.S.C. § 1983, state actors like the Board Defendants and the VERC's members – whose identities have yet to be ascertained – forfeit their qualified immunity from liability when, acting in their official capacities, they deliberately infringe on constitutional rights: "[A] state official who violates federal law '***is in that case stripped of his official or representative character and***

*is subjected in his person to the consequences* of his individual conduct.'"
*Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974) (emphasis added).

77.    The Free Exercise Clause of the U.S. Constitution's First
Amendment, made applicable to states via the Fourteenth Amendment, prohibits
state governments from infringing on individuals' freedom of religion.  The
Fourteenth Amendment prohibits state governments from "depriv[ing] any person
of life, *liberty*, or property without due process of law."  U.S. Const. amend. XIV,
§ 1 (emphasis added).

78.    "The Free Exercise Clause protects against government hostility that
is masked as well as overt."  *Church of the Lukumi Babalu Aye v. City of Hialeah*,
508 U.S. 520, 534 (1993) (*Lukumi*).  Acting under color of state law, the Board
Defendants expressed overt hostility toward the religious beliefs of certain OHSU
employees, including and especially Plaintiff, by declaring which religious beliefs
were worthy of religious exceptions from the Governor's Vaccine Mandate and
which religious beliefs were not.

79.    Furthermore, "[w]hen the power, prestige and financial support of
government is placed behind" – or, for that matter, against – "a particular religious
belief, *the indirect coercive pressure upon religious (individuals) to conform to
the prevailing approved religion is plain*."  *Sch. Dist. of Abington Twp. v.
Schempp*, 374 U.S. 203, 221 (1963) (*Schempp*) (emphasis added).  Acting under
color of state law, the Board Defendants effectively declared that because multiple
high-profile religious organizations had expressed approval of COVID-19 vaccines
despite their connection to abortion, OHSU employees belonging to those
organizations' faith essentially had no excuse for not receiving a COVID-19
vaccine.  In so doing, the Board Defendants overstepped their constitutional
bounds, pressuring Plaintiff to conform to the prevailing approved religion.

80.    Acting under color of state law, the members of the VERC – whose identities have yet to be ascertained – effectively penalized Plaintiff for adhering to her sincere, religiously-based objection to receiving a COVID-19 vaccine by threatening to fire, and then firing, Plaintiff.  The VERC's members forced Plaintiff to choose between the government-provided benefit of continued employment with OHSU and following her religious beliefs.  This, the U.S. Constitution prohibits.

81.    Even assuming Defendant OHSU had a compelling interest in halting the spread of COVID-19 to its employees and patients, the VERC's members could – and should – have reasonably accommodated Plaintiff's beliefs and let her keep working.  The actions of the Board Defendants in declaring which religious beliefs were worthy of accommodation, and the VERC's actions in enforcing the policy established by the Board Defendants toward that end, were thus not narrowly tailored and cannot survive strict scrutiny under the First Amendment.

82.    Based on the foregoing, the Board Defendants and DOES 1-50, including the members of the VERC, have deprived Plaintiff of her constitutionally protected freedom of religion.

## REQUEST FOR DECLARATORY RELIEF
### Against the Board Defendants and DOES 1-50

83.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

84.    As stated *supra*, "[t]he Free Exercise Clause protects against government hostility that is masked as well as overt."  *Lukumi*, 508 U.S. at 534.  By declaring which religious beliefs were worthy of religious exceptions from the Governor's Vaccine Mandate and which religious beliefs were not, the Board Defendants have openly displayed overt hostility to Plaintiff's religious beliefs in

violation of the Free Exercise Clause.  *See* Ex. "E."  The VERC's members did likewise in asking Plaintiff to reconsider her religious objection to receiving a COVID-19 vaccine as a condition of maintaining her employment.  *See* Ex. "F."

85.    As also stated *supra*, "[w]hen the power, prestige and financial support of government is placed behind" – or, for that matter, against – "a particular religious belief, ***the indirect coercive pressure upon religious (individuals) to conform to the prevailing approved religion is plain***."  *Schempp*, 374 U.S. at 221.  By declaring which religious beliefs were worthy of religious exceptions from the Governor's Vaccine Mandate and which religious beliefs were not, the Board Defendants placed coercive pressure on Plaintiff to conform to the prevailing approved religion.  *See* Ex. "D."  The VERC's members did likewise in asking Plaintiff to reconsider her religious objection to receiving a COVID-19 vaccine as a condition of maintaining her employment.  *See* Ex. "C."

86.    Based on the foregoing, the Court should declare that the Board Defendants' policy declaring which beliefs are worthy of religious exceptions to Gov. Brown's Vaccine Mandate and which beliefs are not violates the U.S. Constitution's Free Exercise Clause on its face.

## REQUEST FOR INJUNCTIVE RELIEF
### Against the Board Defendants and DOES 1-50

87.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

88.    Eleventh Amendment immunity "is subject to an exception for actions for prospective declaratory or injunctive relief against state officers in their official capacities for their [continuing] violations of federal law" so long as the state officer involved has "some connection with enforcement of the act."  *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) (internal quotations omitted).

89.     Plaintiff requests that the Court preliminarily and permanently enjoin the Board Defendants from enforcing Defendant OHSU's policy declaring which religious beliefs are unworthy of accommodation, as this policy is unconstitutional. In addition, Plaintiff requests that the Court preliminarily and permanently enjoin the Board Defendants to rewrite the policy to reflect no hostility toward specific religious beliefs of any kind.

90.     In addition, Plaintiff requests that the Court preliminarily and permanently enjoin the VERC – whose members are identified herein as DOES 1-50 – to conduct a *de novo* review of Plaintiff's religious accommodation requests and reinstate Plaintiff as an OHSU employee, providing reasonable accommodations of her sincerely held religious beliefs accordingly.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

### **ON ALL CAUSES OF ACTION:**

1.     For declaratory and injunctive relief against the Board Defendants and the members of the VERC, as stated *supra*;

2.     For economic damages in an amount according to proof at trial;

3.     For non-economic damages in an amount according to proof at trial;

4.     For punitive damages in an amount according to proof at trial;

5.     For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

6.     For such other and further relief as the Court may deem proper.

Dated: February 28, 2023                    PACIFIC JUSTICE INSTITUTE
                                            __/s/ *RAY D. HACKE*_____
                                            Ray D. Hacke
                                            Attorneys for Plaintiff
                                            ELVIRA CHEGARNOV

## PROOF OF SERVICE

I am employed in the County of Marion, State of Oregon.  I am over the age of eighteen and not a16 party to the within action; my business address is 317 Court St. NE, Suite 202, Salem, OR 97305.

On or about February 28, 2023, I served the following documents on the interested parties by placing a true copy thereof enclosed in sealed envelope(s) addressed to said parties:

**COMPLAINT FOR DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**

## PLEASE SEE ATTACHED SERVICE LIST

  X   BY MAIL:  I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same date with postage thereon fully prepaid at Salem, Oregon in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____BY PERSONAL SERVICE:  I caused such envelope to be delivered by hand to the office of the addressee(s).

_____X__BY ELECTRONIC MAIL: I caused such documents to be served on the interested parties via electronic mail and through the court's ECF website.

_____(State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

  X   (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 28, 2023, at Salem, Oregon.

*/s/ LAUREN PEFFERLE*
Lauren Pefferle

## SERVICE LIST

Thomas R. Johnson
Attorney for Defendants
Stoel Rives LLP
760 SW Ninth Ave.
Suite 3000
Portland, OR 97205

# EXHIBIT "A"

Browse Stories

Awards and Accomplishments

Community

COVID-19

Education

Health Care

Labor Relations

Philanthropy

Research

Viewpoint

f Share    Tweet    in Share    ✉ Email    🖨 Print

# Abortion is essential health care

🕐 June 24, 2022    📍 Portland, Oregon



*Content warning: In support of trauma-informed communications, please be aware that this message contains topics that may be activating for some community members. The* Confidential Advocacy Program ↗ *can be reached 24/7 by calling 833-495-2277. Additional resources for OHSU members are available* here ↗*.*

Every day at OHSU, thousands of dedicated researchers, clinicians, students and staff advance our focus of healing, teaching and discovery, to improve not just the lives of Oregonians, but of all those who interact with this institution. They do so with science as their guide and the belief that every individual should be able to make informed health care decisions for themselves, including whether or not to access abortion care.

History shows us that the impact of today's decision by the United States Supreme Court to roll back the protections of *Roe v. Wade* guarantees one thing: Abortion will become unsafe and less accessible for far too many people in this country. It should not be this way. We believe that access to health care of any kind, including abortion, should not be limited by location, resources, bias, prejudice or the absence of care.

Here at OHSU, we are resolute in our commitment to provide the full continuum of sexual and reproductive health care — including abortion — to all who seek it, and to educate the next generation of clinicians and advance groundbreaking research. As we face a post-*Roe* world, we acknowledge the increased responsibility we have, along with other providers in Oregon, to ensure people from out-of-state are able to access the critical care they need.

To the individuals who need this care, we stand with you. To the dedicated clinicians and advocates who work tirelessly to provide and advance abortion care, we stand with you. OHSU is committed to doing everything we can to support and advocate for you and for equitable access to comprehensive reproductive services for all people.

*OHSU is committed to ensuring a respectful, welcoming and inclusive place to learn, work and receive care for all people regardless of gender, race, religion and sexual orientation. Our position on this issue is based on our obligation to improve the health and well-being of Oregonians and beyond, not on politics. In taking a position on any issue, OHSU acknowledges that some within the community may disagree. We encourage respectful conversation and feedback so that we may all better understand one another. Only together can we fulfill our mission and stimulate the spirit of inquiry, initiative and cooperation among students, faculty and staff.*

 Previous Story
**OHSU statement on gun violence, public safety**

Next Story
**PUBLIC NOTICE: Northwest Commission on Colleges and Universities to conduct comprehensive evaluation of OHSU on Oct. 24-26, 2022** 

## Media Contact

OHSU Communications

503 494-8231 📞

**Email OHSU** ✉️

## Related

 **OHSU's position is steadfast: Abortion is health care**

# EXHIBIT "B"

**Exhibit 3**

**ellie.chegarnov@outlook.com**

| | |
|---|---|
| **From:** | Connie Seeley <now@ohsu.edu> |
| **Sent:** | Thursday, September 30, 2021 6:13 PM |
| **To:** | Ellie Chegarnov |
| **Subject:** | Sept. 30 update |

OHSU**NOW**

*Contact Language Services if you need help translating.*
*ትርጉም የሚፈልጉ ከሆነ Language Services (የቋንቋ አገልግሎትን) ያግኙ.*
*Molimo Vas da kontaktirate Language Services (Jezički Servis) ukoliko Vam je potrebna pomoć pri prevođenju.*
*Si necesita ayuda con traducción, comuníquese con Language Services (Servicios de Idiomas).*
*ติดต่อ Language Services (บริการด้านภาษา) หากท่านต้องการความช่วยเหลือในการแปลภาษา.*
*Liên lạc Language Services (các Dịch vụ Ngôn ngữ) nếu bạn cần sự trợ giúp thông dịch.*

*Lee el mensaje de ayer.*

 Share your experiences with the **Covington Hotline**

# Today's highlights

- **All OHSU employees and students will need to be compliant with OHSU's vaccination policy by Oct. 18.** Today, we want to reiterate why this is so important and why we have narrow criteria for approving exception requests.
- **The more the merrier: Occupational Health can provide your COVID-19 booster.** No need to try OHSU pharmacies.
- **Automated Box content copy starts tomorrow, Oct. 1.** Do not access or use the From_Box folder in OneDrive until you are notified by ITG that the file migration is complete.
- **Are you experiencing compassion fatigue?** A powerful message from OHSU's Dr. George Keepers.
- **Only electronic badge requests accepted Oct. 4:** All requests must also be approved by a manager/OHSU sponsor.
- **Inbound FedEx shipments have been experiencing substantial delays due to national and worldwide labor shortages.** Please account for these delays when you place your orders.

# Narrow exceptions process will help keep OHSU and our community safe

As you know, all OHSU employees and students will need to be compliant with OHSU's vaccination policy by Oct. 18. Across OHSU's more than 22,000 members, some of you have requested an exception for religious or medical reasons.

On Sept. 22, OHSU shared its narrow criteria for approving exception requests, and some of you have asked – why is this so narrow? OHSU has a responsibility to our members, our patients and our community to keep everyone as safe as possible. Vaccination against COVID-19 is an important tool in creating this safe environment.

There are valid reasons that a person may not be able to get vaccinated, but OHSU, and many of our peers, are using narrow criteria so we can ensure that the lens applied is truly a medical or religious one. In preliminary reviews, **OHSU's exception review panel expects that very few of the submitted requests for religious exceptions will be approved**.

This is in part because social, political or economic philosophies or personal preferences are not considered to be religious beliefs, and will not qualify a member for a religious exception. Examples of beliefs that do **not** qualify for a religious exception include:

- Arguments for free will or against compulsion.
  - This does not refer to the vaccine, but instead your right to have a religious freedom or conscientiously object to the vaccine.
- Concerns over vaccine safety or content.
  - These are not religious arguments and often inconsistent with proven facts.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
  - These professed beliefs are personal moral choices and/or conscientious objections rather than a tenet of a religious faith.
  - No fetal tissue or cells are contained in any of the vaccines currently available under FDA approval or emergency use authorization in the U.S.
  - While they played no role in their development or production, HEK-293 cell lines created over 50 years ago were used in confirmatory testing of the current mRNA vaccines. Cells from the same line have commonly been used in biologic research since the late 70s. This cell line is used in the testing of many common medicines, including Tylenol, Advil, Aspirin, Claritin, Benadryl, Pepto-Bismol, Mucinex, Tums and Prilosec, among many others.
- A personal revelation from God about the vaccine, an objection to the vaccine based upon bodily integrity or sanctity, and/or a belief that the vaccine is "unclean."
  - These are personal moral choices and/or conscientious objection rather than a tenet of a religious faith.

The exception review panel is working through these requests now. However, each review is requiring a high level of individual assessment by multiple reviewers by representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness.

With the rigorous reviews, **it is unlikely that the committee will complete all the reviews by Saturday, Oct. 2**.

As you know, if you are not compliant with the policy by Oct. 18, you cannot work, study or volunteer at OHSU on Oct. 19.  Monday, Oct. 4, is the last day that you could get a Johnson & Johnson vaccine in time to be fully vaccinated and compliant with the policy by Oct. 18.

If you believe your request may not be approved based on these criteria, we are here to help. You can still get vaccinated, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you. Remember to enter your vaccination record as soon as possible in Enterprise Health, as well. It may also be helpful to check that your Enterprise Health record is up-to-date, since OHSU is using that to determine compliance.

If you have questions about the vaccines, email AskOHSU@ohsu.edu, and we can connect you with someone who can answer your questions. You're also encouraged to join an open Q&A forum this Friday, Oct. 1, at 11 a.m.

# The more the merrier: Occupational Health can provide your COVID-19 booster

Occupational Health continues to have ample capacity for giving COVID-19 booster doses to employees and students. Read this OHSU Now post for all the details about making an appointment in Enterprise Health. If you only need the flu vaccine, you are still welcome to walk in on Wednesdays.

Please let our OHSU pharmacy colleagues focus on their work prioritizing patient care.

# Reminder: Box-to-OneDrive automated content copy starts tomorrow

Here's what you need to know:

- Your Box files and folders will be copied by ITG through a series of automated syncs. This process is **entirely automated** and will happen behind the scenes, allowing you to continue working in Box without interruption.
- Your files will begin to appear in a **From_Box folder in OneDrive** starting tomorrow and continuing through Dec. 31, 2021. Read the Sept. 23 OHSU Now post.
- Please **do not use the files in the From_Box folder** in OneDrive until you are notified by ITG that the migration is complete.

Keep working on your files in Box, take a File Management in the Cloud training and start exploring and learning OneDrive. Read the Box Migration FAQs to learn more.

# Are you experiencing compassion fatigue?

In a letter to the Department of Psychiatry on July 30, 2021, George Keepers, M.D., professor and chair of psychiatry, OHSU School of Medicine, wrote, "…There's another surge gaining strength by the day in the country, a surge of anger at the people who have refused to be vaccinated, who have denied the tragedy of this pandemic … ignored scientific experts, ignored the pleas of overworked, despairing health care professionals…."

As Dr. Keepers explains, this anger is symptomatic of compassion fatigue, which can be a normal consequence of working in a helping field. Health care providers and those in professions based on service are particularly vulnerable to compassion fatigue – a reality made precipitously worse by the pandemic.

# EXHIBIT "C"



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

*OHSU Members requesting religious exceptions must personally complete Part A, B and C. All OHSU Members requesting an exception must watch the required video on Occupational Health's webpage. Completed forms should be uploaded into Enterprise Health.*

## Part A: OHSU Member Name and Identifying Information

Name: Ellie Chegarnov

Mailing Address: ▓▓▓▓▓▓▓▓▓▓

City: Portland                     State: OR              Zip Code: ▓▓▓▓

Preferred Pronoun(s): She/her                     Preferred Phone: ▓▓▓▓▓▓▓

Preferred Email: chegarno@ohsu.edu                     Preferred Method of Contact: Email

Employee/Student ID #: 56495        Job Title: Senior Research Assistant/Telework

Manager/Supervisor: ▓▓▓▓▓▓▓▓▓▓

Department: SM.OPHTH Administration (Casey Reading Center)

## Part B:    Religious Exception Request

Name of Religion: Christian (non-denominational)

  X     receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious observances, practices or beliefs and how it affects your ability to receive a COVID-19 vaccination

I am a Christian who sincerely believes the Bible to be the inspired, infallible and authoritative Word of God. I believe that innocent life is sacred to God, from conception, to birth, to natural death. COVID-19 vaccines use fetal cell lines in their development, test efficacy/proof of concept and/or production/manufacturing (https://www.historyofvaccines.org/content/articles/human-cell-strains-vaccine-development & https://www.science.org/news/2020/06/abortion-opponents-protest-covid-19-vaccines-use-fetal-cells).
The presence of and use of immortalized human cell lines taken against the will of the person(s) aborted having been used in the development of vaccinations cause my firm belief that receiving the vaccination into my body is an indirect engagement and participation in abortion. According to the Bible, this is morally compromising (Exodus 20:13, Exodus 21:22-25, Jeremiah 1:5, Psalm 139:13-16).
This belief is concretely held and poses a direct threat to my faith and moral obligations and adherence as a Christian. (https://ag.org/Beliefs/Position-Papers/Abortion-Sanctity-of-Human-Life)
Thus, I respectfully ask for an exemption. I work fully remotely and do not have contact with any patients or staff. Thank you for your consideration of my request.

Is there any other information regarding your beliefs, observances, or practices that would help us evaluate your request?   (for example, have you previously declined medical care because of your religious beliefs?)

N/A



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

A recognized professional, (i.e. religious affiliate), who is familiar with your needs and can substantiate your request, may need to be contacted. Please provide the following information regarding the religious affiliate:

Name of Professional: Pastor Sergey Kozlov

Title: Senior Pastor

Represented Organization: Church of Truth ([www.churchoftruth.com/about](www.churchoftruth.com/about))

Street Address: 7250 NE 41st St.

City: Vancouver                State: WA                Zip Code: 98662

Telephone: 360-253-7738                Email: [admin@churchoftruth.com](mailto:admin@churchoftruth.com)

How long have you had a relationship with the recognized religious professional?:

Since 2015 _____

**AUTHORIZATION:** I authorize Oregon Health & Science University (OHSU) to discuss my circumstances, religious practices, observances and beliefs with the professional religious affiliate named above, and I authorize that religious affiliate to discuss my need for reasonable accommodation with OHSU.

_____
Signature

## Part C:  OHSU Member Attestation

It is OHSU's position that COVID-19 is a highly contagious respiratory virus that affects people of all ages. This virus can cause long-term medical problems and death regardless of age. This virus spreads through respiratory secretions related to speaking, singing, yelling, coughing, and sneezing. Infected individuals can spread the virus to others. Up to 50% or more of people can be infected without realizing it. The COVID-19 vaccines are very safe and highly effective at preventing death and hospitalization. When large numbers within a population are immunized, viral spread will be significantly limited and the development of viral variants can be slowed . Each individual of a community can contribute to this protective approach.

**By signing this form, I acknowledge and affirm that:**

- I am requesting a religious exception from receiving the COVID-19 vaccination.
- OHSU recommends individuals receive COVID-19 vaccination to protect themselves, their families and people they work or live with.



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

- I understand OHSU's position is that if I am not vaccinated, I may become sick with COVID-19 and may put others at risk of serious illness, disability or death.
- If I am a student, I understand not being vaccinated against COVID-19 may impact my ability to participate in external rotations that require vaccination and this may impact my academic progression.
- I have received information about how the vaccine helps protect against COVID-19.
- I have reviewed the materials available on https://www.ohsu.edu/health/unsure-about-covid-vaccines-information-consider-and-how-learn-more and watched the required video on vaccination.
- If I want to, I have been able to ask questions and have my questions answered.
- It is my decision to decline vaccination at this time, even though I have received information about why it is important and the risk of not getting vaccinated. I understand that I may change my mind in the future and receive a vaccination.

By signing this form, I declare and acknowledge that I have read and understand the information on this form. Notwithstanding, I am requesting a religious exception from the COVID-19 vaccine.

**Signature of OHSU Member**: _____  **Date:** _ Sept 13th, 2021 _____

Upload this completed form to Enterprise Health at https://webchartnow.com/ohsu/webchart.cgi.

# EXHIBIT "D"

**Exhibit 4**

**ellie.chegarnov@outlook.com**

| | |
|---|---|
| **From:** | Vaccine Exception Review Committee <now@ohsu.edu> |
| **Sent:** | Tuesday, October 5, 2021 1:42 PM |
| **To:** | Ellie Chegarnov |
| **Subject:** | Your religious exception request was not approved |

OHSU**NOW**

Dear Ellie,

OHSU has completed its review of your request for an exception to the COVID-19 vaccine requirement. Based on the information you submitted and OHSU's narrow criteria established under the law for approvals, you are **not approved for a religious exception**. This is a final decision and may not be appealed.

Please know that each review had two independent assessments by members of the Vaccine Exception Review Committee, which included representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness. These decisions were made using specific criteria established under the law to determine if your request met the long-standing legal definition of any religious or medical exception.

The vast majority of these denials were because the requestor did not meet the legal requirements for a religious exception, but instead stated personal beliefs or conscientious objections as opposed to a fundamental tenet of a religious faith. Examples of beliefs that did not qualify for a religious exception include:

- Arguments for free will, religious freedom or against compulsion.
- Concerns over vaccine safety or content.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
- A personal revelation from God about the vaccine.
- An objection to the COVID vaccine based upon bodily integrity or sanctity and/or a belief that the vaccine is "unclean."

We understand this is difficult news to receive and recognize that you may have deeply held personal convictions which nonetheless do not meet the narrow legal requirements for a religious exception. **OHSU values you and hopes you will consider getting vaccinated in order to remain an OHSU member**. You can still get vaccinated, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you.

Monday, Oct. 4 is the last day you can get a Johnson & Johnson vaccine in time to be fully vaccinated and compliant with the policy by Oct. 18. If you become partially vaccinated prior to the Oct. 18 deadline, please be sure to upload your vaccination record as soon as possible in Enterprise Health. Please also discuss with your manager your intentions regarding vaccination going forward.

As you know, any OHSU member who is not compliant with the vaccine policy by Oct. 18 cannot continue to work, study or volunteer. Specifics on what this means for you, based on your representation group or member type, is coming soon.

OHSU firmly stands behind the community benefit of vaccination against COVID-19. The decision not to get vaccinated can have negative consequences to the unvaccinated person and to those around them. While we acknowledge each individual's right to their opinion and choice about vaccination, we also need to ensure OHSU sets policy to protect our patients and our community.

Trouble reading this message?
View in a browser

# EXHIBIT "E"

**ellie.chegarnov@outlook.com**

| | |
|---|---|
| **From:** | Connie Seeley <now@ohsu.edu> |
| **Sent:** | Wednesday, September 22, 2021 6:40 PM |
| **To:** | Ellie Chegarnov |
| **Subject:** | Sept. 22 update |

OHSU**NOW**

*Contact Language Services if you need help translating.*
*ትርጉም የሚፈልጉ ከሆነ Language Services (የቋንቋ አገልግሎትን) ያግኙ.*
*Molimo Vas da kontaktirate Language Services (Jezički Servis) ukoliko Vam je potrebna pomoć pri prevođenju.*
*Si necesita ayuda con traducción, comuníquese con Language Services (Servicios de Idiomas).*
*ติดต่อ Language Services (บริการด้านภาษา) หากท่านต้องการความช่วยเหลือในการแปลภาษา.*
*Liên lạc Language Services (các Dịch vụ Ngôn ngữ) nếu bạn cần sự trợ giúp thông dịch.*

*Lee el mensaje de ayer.*


Share your experiences with the **Covington Hotline**

## Today's highlights

- **Criteria for vaccine policy exceptions:** After a thoughtful and comprehensive review, OHSU shares its narrow criteria for medical and religious exceptions.

## Criteria for vaccine policy exceptions

OHSU firmly stands behind the community benefit of vaccination against COVID-19. The decision not to get vaccinated can have negative consequences to the unvaccinated person and to those around them. State and federal officials have announced vaccination requirements for large employers across the country in large part to realize the community benefit.

To be compliant with OHSU's vaccination policy (and state law) by Oct. 18, you must either be fully vaccinated (14 days after your final vaccination dose) or have an approved medical or religious exception.

Exception requests were due in Enterprise Health on Monday, Sept. 20, and many of you have asked about the criteria for reviewing these.

Thank you for your patience as OHSU's leadership and Vaccine Exception Review Panel have thoughtfully considered the possible personal, community and legal implications. This deliberate review has led to developing very narrow criteria for approving medical or religious exceptions at OHSU. You can see the full guidance that the Vaccine Exception Review Panel will use on the COVID-19 O2 site's Vaccine page. However, we want to highlight a few of the key points for both types of exceptions.

We understand that some of you may not qualify for an exception based on thesecriteria. We are here to help. If you email AskOHSU@ohsu.edu, our team can connect you with someone to help answer your questions. We want you to be compliant and we value you. We also need to ensure OHSU sets policy to protect our patients and our community.

We plan to share a matrix of what non-compliance will look like by employee group very soon.

**Medical exceptions**
Medical exceptions will be allowed only for specific reasons consistent with guidance from the Centers for Disease Control and Prevention (CDC), including:

- Documented history of severe allergic reaction to one or more components of all three currently approved COVID-19 vaccines.
- Documented history of severe or immediate-type hypersensitivity allergic reaction to a COVID-19 vaccine, and separate contraindication to other available formulations.
- Individuals who have received monoclonal antibodies for the treatment or prophylaxis following exposure of COVID-19 for 90 days after administration.


Examples of conditions that would not qualify for a medical exception include:

- History of severe allergic reactions to foods, oral medications, latex, pets, insects and environmental triggers.
- Trypanophobia (fear of injections or needles).
- Previous history of normal vaccine side effects or general avoidance of vaccines.
- History of COVID-19 infection.
- Concerns that vaccination could exacerbate an autoimmune disorder.
- Routine requests because of pregnancy.


**Religious exceptions**
In accordance with relevant federal and Oregon law, members who can demonstrate a sincerely held religious belief and past behavior consistent with that belief will be approved for an exception. Please be advised that social, political or economic philosophies or personal preferences are not considered to be religious beliefs.

Examples of beliefs or past behavior that may disqualify an individual from receiving a religious exception include:

- Receiving another vaccine in the last five years.
- An objection to the vaccine on the basis of fetal cell concerns.
  - No fetal tissue or cells are contained in any of the vaccines currently available under FDA approval or emergency use authorization in the U.S.

o   While they played no role in their development or production, HEK-293 cell lines created over 50 years ago were used in confirmatory testing of the current mRNA vaccines. Cells from the same line have commonly been used in biologic research since the late 70s. This cell line is used in the testing of many common medicines, including Tylenol, Advil, Aspirin, Claritin, Benadryl, Pepto-Bismol, Mucinex, Tums and Prilosec, among many others.

o   Given the gravity of the pandemic and lack of alternative vaccines, both the Vatican and the U.S. Conference of Catholic Bishops have endorsed the use of the Pfizer/BioNTech and Moderna vaccines, despite their remote connection to fetal tissues.  The president of the National Association of Evangelicals, and leadership of the Orthodox (Jewish) Union issued a joint statement encouraging their members to be vaccinated.

**Accommodations with an approved exception**

If your exception is approved using this guidance, OHSU still must keep you, your colleagues and our patients safe. How we will achieve this will likely evolve as we learn more about how to best prevent the spread of COVID-19.

OHSU will endeavor to find accommodation for exempt, but unvaccinated employees that do not involve direct, in-person patient contact. In the event that an accommodation that maintains the safety of our patients and employees cannot be found, an employee may be placed on unpaid leave. As the situation evolves, OHSU will periodically assess whether and under what circumstances these employees might once again participate in patient care.

Similarly, because of the current national public health emergency resulting from the COVID-19 pandemic, OHSU will not place unvaccinated students in direct, in-person, patient contact for the foreseeable future. OHSU programs will endeavor to find reasonable accommodations for unvaccinated students who have received approved exceptions to try and support their degree progression while they are unable to engage in direct, in-person, patient contact. As the situation evolves, OHSU will periodically assess when and under what circumstances these students might once again participate in patient care activities.

If you have an approved exception, and work in an OHSU building, you currently will need to:

- Wear an approved and fit-tested respirator or the N95 or equivalent at all times, except when actively eating/drinking, in accordance with OHA requirements.
- Maintain physical distancing from others when indoors in a clinical area.
- Maintain at least 6-feet distance when actively eating/drinking and mask is removed.
- Wear a mask outdoors when 6-feet distance from others cannot be maintained.
- Get tested at least twice weekly.

**You can still get vaccinated**

If you still need your vaccination, you can get one, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you. To be compliant with the policy by Oct. 18, you will need to receive the Johnson & Johnson vaccine by Oct. 4. Remember to enter your vaccination record in Enterprise Health as well.

# The latest data

# EXHIBIT "F"

# Exhibit 11



**OHSU**

Dec. 3, 2021

Human Resources

Chegarnov, Elvira (Ellie)
2640 NE 105th Ave
Portland, OR 97220-2818

hrcomm@ohsu.edu

Mail code: HR
3181 S.W. Sam Jackson Park Rd.
Portland, OR 97239

**Re: Final notice about your employment**

This letter serves as final notice that your employment with OHSU has been
terminated effective Dec. 2, 2021, due to non-compliance with OHSU Policy
03-30-150 COVID-19 Immunizations and Education.

A final paycheck will be sent in a separate mailing to this address. If your
net pay is zero, it's because applicable deductions offset your earnings;
however, the gross earnings will be reported on your W-2 form.

If you had active benefits coverage in November, your coverage will
continue through Dec. 31, 2021. Within 45 days following termination of
your benefits, you will be sent an information packet about the option to
continue benefits through COBRA.

Please work with your former supervisor to arrange the return of any
OHSU equipment, keys, and your ID badge as soon as possible, if necessary.

Thank you for your service to OHSU and the people of Oregon. We regret
losing you as an OHSU member, and wish you the very best in your future
endeavors.

OHSU Human Resources

Employee ID#: 56495

# EXHIBIT "G"



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Seattle Field Office**

Federal Office Building
909 First Avenue, Suite 400
Seattle, WA  98104-1061
Seattle Direct Dial:  (206) 576-3000
FAX (206) 220-6911
Website:  www.eeoc.gov

Charge No.  551-2022-00204

Ellie Chegarnov
2640 NE 105th Ave
PORTLAND, OR 97220                                                    Charging Party

Oregon Health & Science University
Attn: Emily Shults
3181 SW Sam Jackson Park Rd
Portland, OR  97239                                                    Respondent

<u>DETERMINATION</u>

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended. All requirements for coverage have been met.

Charging Party alleges that she was denied a religious accommodation, and that she was discharged because of her religion.

I have considered all the evidence disclosed during the investigation and have determined that there is reasonable cause to believe that the Charging Party informed Respondent of their sincerely held religious belief, the conflict it posed with a job requirement, and the need for accommodation as early as September 1, 2021.  There is also reasonable cause to believe that there was an accommodation that Respondent could have provided that would not have posed an undue hardship.  However, Respondent denied the Charging Party's request for religious accommodation on or about October 5, 2021, placed the Charging Party on unpaid leave on or around October 19, 2021, and discharged the Charging Party on or around December 2, 2021 in violation of Title VII of the Civil Rights Act of 1964, as amended.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation.  Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter.

If the Respondent declines to discuss settlement, or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.  Disclosure of information obtained by the Commission during the conciliation process will be made in accordance with Section 706(b) of Title VII and Section 1601.26 of the Commission's procedural regulations.  A Commission representative will contact each party in the near future to begin conciliation.

On Behalf of the Commission

_December 22, 2022_                    _Elizabeth M. Cannon_
Date                                                    Elizabeth M. Cannon
                                                            Director

# EXHIBIT "H"

OREGON LABOR & INDUSTRIES

**VAL HOYLE**
Labor Commissioner

December 2, 2022

ELLIE CHEGARNOV
2640 NE 105TH AVE
PORTLAND, OR 97220

RE:   Complainant:   Ellie Chegarnov
      Respondent:    Oregon Health & Science University Dba Ohsu
      Case #:        EEEMRG211202-92376
      EEOC #:        551-2022-00204

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division is now administratively closed because the case has reached its one year anniversary date. This action does not affect either the status of the EEOC investigation or your right to file a federal suit, pursuant to the worksharing agreement between the Equal Employment Opportunities Commission (EEOC) and the Bureau of Labor and Industries. Please call 1-800-669-4000 with inquiries regarding the status of this complaint. Be sure to reference the EEOC charge number if you contact them.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation.</u>*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: December 2, 2022

Enclosure(s)

 Portland · Salem · Eugene

 **oregon.gov/boli**
Help@boli.oregon.gov

 (971) 245-3844
Ore. Relay TTY: 711



# EXHIBIT "I"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days    **Add Days**    Workdays    Add Workdays    Weekday    Week №

From **Friday, December 2, 2022**
Added 90 days

## Result: Thursday, March 2, 2023

### Calendar showing period from December 2, 2022 to March 2, 2023

| December 2022 | | | | | | |
|---|---|---|---|---|---|---|
| 29 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| January 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 31 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

| February 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 28 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | | | | |

| March 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 2 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

☐ = Start date (Dec 2, 2022)    ☐ = Final result date (Mar 2, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

# EXHIBIT "J"

# LIBERTY COUNSEL

| **DISTRICT OF COLUMBIA** | **FLORIDA** | **VIRGINIA** |
|---|---|---|
| 109 Second Street NE | PO Box 540774 | PO Box 11108 |
| Washington, DC 20002 | Orlando, FL 32854 | Lynchburg, VA 24506 |
| Tel 202-289-1776 | Tel 407-875-1776 | Tel 407-875-1776 |
| Fax 407-875-0770 | Fax 407-875-0770 | Fax 407-875-0770 |
| LC.org | | Liberty@LC.org |

**REPLY TO FLORIDA**

October 11, 2021

**By E-mail**

Danny Jacobs, M.D., M.P.H., F.A.C.S.        Alice Cuprill-Comas, Esq.
President                                                          Executive Vice President & General Counsel
jacobsda@ohsu.edu                                        cuprillc@ohsu.edu

Oregon Health & Science University
3181 S.W. Sam Jackson Park Road
Portland, Oregon 97239-3098

Re:      **Unlawful Denials of Religious Exceptions from**
         **Mandatory COVID-19 Vaccination Policy**

**THIS IS A LEGAL DEMAND LETTER INCLUDING AN EVIDENCE PRESERVATION DEMAND. OHSU'S PROCESS AND CRITERIA FOR RELIGIOUS EXCEPTION FROM ITS MANDATORY COVID-19 VACCINATION POLICY ARE UNLAWFUL. YOUR PROMPT RESPONSE IS REQUIRED ON OR BEFORE OCTOBER 14, 2021 AT 5:00 P.M. TO AVOID A LAWSUIT.**

Dear Mr. Jacobs and Ms. Cuprill-Comas:

Liberty Counsel is a national non-profit litigation, education, and public policy organization with an emphasis on First Amendment liberties, and a particular focus on religious freedom and the sanctity of human life. Liberty Counsel has engaged in extensive litigation in the last year regarding civil rights violations ostensibly justified by COVID-19, and has had great success holding both government and private actors accountable. *See, e.g., Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 1289 (2021) (permanent injunction granted and **$1,350,000** in attorney's fees awarded in *Harvest Rock Church, Inc. v. Newsom*, No. 2:20-cv-06414, C.D. Cal., May 17, 2021); *Harvest Rock Church, Inc. v. Newsom,* 141 S. Ct. 889 (2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020).

We have also sued the States of Maine and New York over their refusals to afford religious accommodations to healthcare workers under forced COVID-19 vaccination mandates. *See Does v. Mills*, No. 1:21-cv-00242-JDL, Doc. 1 (D. Me. Aug. 25, 2021); *Does v. Hochul*, No. 1:21-CV-05067-AMD-TAM, Doc. 1 (E.D.N.Y. Sept. 10, 2021). New York's unconstitutional mandate is

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 2

now enjoined by both a federal district court (see *Does v. Hochul*, *supra*, Doc. 35), and the Second Circuit Court of Appeals, *see We the Patriots USA, Inc. v. Hochul*, No. 21-2179, Doc. 65 (2nd Cir. Sept. 30, 2021) (granting injunction pending appeal against state policy denying religious exemptions from COVID-19 vaccination requirement for healthcare workers), and we are expecting a similar outcome in Maine. In addition, we are preparing individual and class action lawsuits against healthcare employers nationwide for their unlawful refusals to provide reasonable accommodations to their employees.

I write on behalf of the Oregon Health & Science University (OHSU) employee ███████ ████████ ("**Employee 1**"), and several others, who are requesting exception from OHSU's mandatory COVID-19 vaccination policy as a reasonable accommodation of their sincerely held religious beliefs, and whose requests have been denied or effectively denied, regardless of merit, under OHSU's cynical and unlawful "narrow exceptions process." (Employee 1 request and denial attached as **Exhibit 1**.) Many of these employees have engaged Liberty Counsel to bring legal action if OHSU denies their merited religious exception requests, and **we are actively seeking to represent, *pro bono*, additional OHSU employees who are adversely affected by OHSU's illegal mandate and exception process**.

OHSU's "narrow exceptions process" is not even close to the line of legality and demonstrates the utmost bad faith towards its employees seeking religious exemptions. OHSU must cease its unlawful practices immediately.

A.    **OHSU's Unlawful Criteria for Religious Exception.**

*All hope abandon, ye who enter in!* [1]

OHSU ostensibly offered its employees a process for requesting a medical or religious exception to OHSU's mandatory COVID-19 vaccination policy, with all requests due by September 20, 2021. (*Sept. 22 update*, attached as **Exhibit 2**.) For religious exception requests, OHSU required submission of its *OHSU Member COVID-19 Vaccine Religious Exception Request Form* (*see, e.g.*, Ex. 1). After the deadline for submission, however, OHSU introduced its Vaccine Exception Review Panel and revealed its post hoc "very narrow criteria for approving medical or religious exemptions." (Ex. 1.) The previously undisclosed policy promises that, "[i]n accordance with relevant federal and Oregon law, members who can demonstrate a sincerely held religious belief and past behavior consistent with that belief will be approved," but then smugly declared the beliefs OHSU deems insufficiently religious. (Ex. 2; *OHSU Exceptions Requests and Accommodations Process and FAQs*, attached as **Exhibit 3**; *Narrow exceptions process will help keep OHSU and our community safe*, attached as **Exhibit 4**.)

According to OHSU's "narrow exceptions process," the beliefs deemed insufficiently religious include any beliefs leading to "objection to the vaccine on the basis of fetal cell concerns"

---

[1]    Dante Alighieri, *Inferno*, Canto III (1314) (Longfellow Translation, 1867), *available at* digitaldante.columbia.edu/dante/divine-comedy/inferno/inferno-3/.

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 3

and "objection to the vaccine based upon bodily integrity or sanctity." (Exs. 3, 4.) OHSU declares any such "professed beliefs" to be "personal moral choices and/or conscientious objections rather than a tenet of a religious faith." (Exs. 3, 4.) OHSU also declares that "[r]eceiving another vaccine in the last five years" is "past behavior that may disqualify an individual from receiving a religious exception." (Exs. 2–4.)

OHSU's communications following the revelation of its "narrow exceptions process" make it increasingly clear that OHSU's Exception Review Panel is actively working against employees seeking religious exceptions, and that the process is designed to intimidate and discourage employees into giving up. OHSU feigns that "each review is requiring a high level of individual assessment by multiple reviewers by representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness," and warns that "[i]n preliminary reviews, **OHSU's exception review panel expects that very few of the submitted requests for religious exceptions will be approved**." (Ex. 4; *An update on vaccine policy exception requests*, attached as **Exhibit 5**.) Moreover, OHSU advised that the Review Panel may not complete its review before the last day that an employee can receive a vaccine in time to be fully vaccinated and compliant with the policy by Oct. 18." (Exs. 4, 5.) In other words, OHSU unequivocally informed its employees seeking religious exceptions that they likely must choose between receiving a COVID-19 shot that would violate their sincerely held religious beliefs, or getting fired by OHSU, **before OHSU gives them a decision on their exception requests**. Especially when combined with the discouragement that "very few" exceptions will be approved, putting employees to this unconscionable choice constitutes effective denial.

Employee 1 submitted her religious exception request on September 19, 2021, and OHSU denied her request on October 4, 2021—the day OHSU declared to be the last day an employee could receive the Johnson & Johnson vaccine and still be in compliance with OHSU's vaccination policy as of October 18. (Ex. 1.) Despite Employee 1's having plainly and completely explained her sincerely held religious beliefs against receiving a COVID-19 vaccine, and providing a verification of the sincerity of her beliefs from her pastor (which OHSU cannot legally require, *see infra* Pt. B), OHSU denied Employee 1's exception request (and numerous others') with no opportunity for appeal, and with no explanation other than generic references to OHSU's "narrow criteria." (Ex. 1.) As shown below, despite feigning legal compliance, OHSU has unlawfully subjected Employee 1 and others to a sham process for religious exceptions and issued pretextual denials.

### B.    OHSU's Denials Violate Title VII Because OHSU Is Not Permitted to Judge the Validity or Reasonableness of Any Employee's Sincerely Held Religious Beliefs.

OHSU has no legal authority to dictate what any employee's religion is or ought to be, or to be the arbiter of the validity or reasonableness of any employee's sincerely held religious beliefs. Nor does OHSU have the authority to demand that a third party validate any employee's religious beliefs. An employee's religious beliefs need only be sincere to merit legal protection and require OHSU's accommodation. And given OHSU's barely concealed animus towards the religious

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 4

beliefs of its employees, any employee who would risk OHSU's retaliation by making a religious exemption request should be presumed sincere, and the law requires it.

Title VII of the Civil Rights Act of 1964 prohibits OHSU from discriminating against its employees on the basis of their sincerely held religious beliefs. *See* 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin"); *see also EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) (same). **Title VII defines "religion" as "all aspects of religious observance and practice, as well as belief."** 42 U.S.C. §2000e(j) (emphasis added). Moreover, as the EEOC has made clear, **Title VII's protections also extend to nonreligious beliefs if related to morality, ultimate ideas about life, purpose, and death**. *See* EEOC, *Questions and Answers: Religious Discrimination in the Workplace* (July 22, 2008), https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-workplace ("Title VII's protections also extend to those who are discriminated against or need accommodation because they profess no religious beliefs. Religious beliefs include theistic beliefs (i.e. those that include a belief in God) as well as non-theistic 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.' Although courts generally resolve doubts about particular beliefs in favor of finding that they are religious, beliefs are not protected merely because they are strongly held. Rather, religion typically concerns 'ultimate ideas' about 'life, purpose, and death.'").

OHSU is not permitted to determine which religious adherent has a "correct" or "proper" or "valid" understanding of religious doctrine, or whether any employee's sincerely held religious beliefs are shared by other adherents. As the Supreme Court has recognized, employees' "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit [legal] protection." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (same). Additionally, though membership in or adherence to the tenets of an organized religion is plainly sufficient to provide protection for an individual's sincerely held religious beliefs, it is not a necessary precondition. *See Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829, 834 (1989) ("**Undoubtedly, membership in an organized religious denomination, especially one with a specific tenet forbidding members to work on Sunday, would simplify the problem of identifying sincerely held religious beliefs, but we reject the notion that to claim the protection [for sincerely held religious beliefs], one must be responding to the commands of a particular religious organization**." (emphasis added)); *see also Office of Foreign Assets Control v. Voices in the Wilderness*, 329 F. Supp. 2d 71, 81 (D.D.C. 2004) (noting that the law provides protection for "sincerely held religious beliefs," "not just tenets of organized religion"). Given this authority, OHSU's manufactured distinction between "personal moral choices and/or conscientious objections" and "a tenet of a religious faith" is legally unsupportable, and any denials of religious exception requests based on this distinction is illegally pretextual.

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 5

In fact, the law provides protection for sincerely held religious beliefs even when some members of the same religious organization, sect, or denomination disagree with the beliefs espoused by the individual. That some OHSU employees requesting accommodation may have sincerely held religious beliefs that differ from those sincerely held by other individuals and organizations is irrelevant to whether **the employees'** sincerely held religious beliefs are entitled to protection under Title VII. Indeed,

> **[i]ntrafaith differences of that kind are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences . . . and the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect. Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation.**

450 U.S. at 715–16 (emphasis added). The denial of any employee's request for a religious accommodation based on the views of other individuals who do not share the employee's beliefs is unlawful. In fact, **it is legally irrelevant what other individuals think or believe**.

Many OHSU employees have sincerely held religious beliefs that God forms children in the womb and knows them prior to their birth, and that because of this, life is sacred from the moment of conception to natural death. *See Psalm* 139:13–14 (ESV) ("For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made."); *Psalm* 139:16 (ESV) ("Your eyes saw my unformed substance; in your book were written, every one of them, the days that were formed for me, when as yet there was none of them."); *Isaiah* 44:2 (KJV) ("the Lord that made thee, and formed thee from the womb"); *Isaiah* 44:24 (KJV) ("Thus saith the Lord, thy redeemer, and he that formed thee from the womb, I am the Lord that maketh all things."); *Isaiah* 49:1 (KJV) ("The Lord hath called my from the womb; from the bowels of my mother hath he made mention of my name."); *Isaiah* 49:5 (KJV) ("the Lord that formed me from the womb to be his servant"); *Jeremiah* 1:5 (KJV) ("Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee, and I ordained thee."). These employees also have sincerely held religious beliefs that every child's life is sacred because each is made in the image of God. *See Genesis* 1:26–27 (KJV) ("Let us make man in our image, after our likeness. . . . So God created man in his own image; in the image of God created he him; male and female created he them.").

Many OHSU employees also have sincerely held religious beliefs that because life is sacred from the moment of conception, the killing of that innocent life is the murder of an innocent human in violation of Scripture. *See, e.g.*, *Exodus* 20:13 (KJV) ("Though shalt not kill."); *Exodus* 21:22–23 (setting the penalty as death for even the accidental killing of an unborn child); *Exodus* 23:7 (KJV) ("the innocent and righteous slay thou not, for I will not justify the wicked"); *Genesis* 9:6

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 6

(KJV) ("Whoso sheddeth a man's blood, by man shall his blood by shed: for in the image of God made he man."); *Deuteronomy* 27:25 (KJV) ("Cursed be he that taketh reward to slay an innocent person."); *Proverbs* 6:16–17 (KJV) ("These six things doth the Lord hate: yea, seven are an abomination to him . . . hands that shed innocent blood."). Many OHSU employees also have sincerely held religious beliefs that it would be better to tie millstones around their necks and be drowned in the sea than to bring harm to an innocent child. *See Matthew* 18:6; *Luke* 17:2.

Many OHSU employees also have sincerely held religious beliefs that their bodies are temples of the Holy Spirit, and that to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the temple of the Holy Spirit. (*See 1 Corinthians* 6:15–20 (KJV) ("Know ye not that your bodies are the members of Christ? shall I then take the members of Chris and make them members of an harlot? God forbid. . . . What? Know ye not that your body is the temple of the Holy Ghost which is in you, which have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's.").

The Hebrew word for "abomination" in the *Proverbs* 6:16–17 (KJV) text quoted above is תּוֹעֵבָה (to`eba). The verbal form is "abhor," "loath," "detest," and "exclude." Twelve times the Book of Proverbs uses תּוֹעֵבָה in reference to an "abomination to the Lord." (יהוה or Yahweh). The word is also used in conjunction with the Ammonites and the Ashtoreth, the Sidonians, Chemosth, and Moab. Some of these nations sacrificed their children to Baal. Indeed, *Jeremiah* 19:4–9, refers to the shedding of innocent blood by sacrificing children as the reason for judgement against Judah. Abortion is the modern-day sacrifice of children made in the image of God. Many OHSU employees do not want to be a part of such an "abomination." They do not want to be in any way associated with abortion, directly or indirectly. For them, doing so is abhorrent, loathsome, detestable—abominable—to God.

Thus, while there may be some faith leaders and other religious adherents whose understanding of Scripture is different, and who may be willing to accept one of the three currently available COVID-19 vaccines despite their connection with aborted fetal cell lines or other objections, any OHSU employee is entitled to interpret the Scriptural commands against murder and polluting the body differently, which many indisputably do. Once an employee has articulated **the employee's** sincerely held religious beliefs opposing the currently available COVID-19 vaccines, whether those beliefs are the same as or nothing like any other person's beliefs, the proper inquiry is at its end. OHSU violates Title VII if it denies a religious exemption request because a third party did not vouch for or agree with the employee's sincerely held beliefs.

Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6 (which OHSU knows[2]), and for other articulated reasons, the sincerely held

---

[2]     Editorializations notwithstanding, OHSU admits its knowledge of the aborted fetal cell connection as to the available Moderna and Pfizer vaccines. (Exs. 2–4.) OHSU ignores, however,

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 7

religious beliefs of Employee 1 and many other OHSU employees compel them to abstain from accepting or injecting any of these products into their bodies, regardless of the perceived benefits or rationales. Employee 1 explained that, because of the undisputed aborted fetal cell connections and biblical injunctions against the taking of innocent life, receiving any COVID-19 vaccine would be a sin and therefore a violation of her sincerely held religious beliefs. Employee 1's (and many other employees') sincerely held beliefs about the sin of abortion and any participation in abortion—no matter how remote—clearly concern "'ultimate ideas' about 'life, purpose, and death.'" *Questions and Answers*, *supra*. OHSU cannot arbitrarily disqualify these sincerely held beliefs as not "religious" based on any contrary views of its Review Panel or even public religious figures.

OHSU's disqualification criterion of "[r]eceiving another vaccine in the last five years" is also legally unsupportable. All available COVID-19 vaccines are brand new, and are unlike preexisting vaccines in numerous respects involving their technology, development, contents, and administration. For example, OHSU cannot seriously point to an employee's prior receipt of the annual flu vaccine as inconsistent with an employee's current religious objections to the COVID-19 vaccines—the available flu vaccines were not developed, produced, manufactured, or tested using aborted fetal cell lines. Moreover, any employee's knowledge, understanding, and beliefs towards vaccinations and other medications may (and likely do) change over time. The legal premise of OHSU's disqualifier—that an employee's current request for religious accommodation must be consistent with all the employees' prior health decisions or prior religious understandings—is false, and any denial based on this false premise is illegally pretextual.

**In sum, it is unlawful for OHSU to condition approval of any employee's request for religious accommodation on agreement with OHSU's or any third party's views on acceptable religious beliefs or on the employee's past health decisions or the theological reasons for those decisions.**

### C.    OHSU's Denials of Religious Exceptions Violate Oregon Employment Discrimination Statutes Which are Patterned after Title VII.

Oregon state law provides employees the same protections from religious discrimination as the federal Title VII. *See, e.g.*, *Richardson v. Nw. Christian Univ.*, 242 F. Supp. 3d 1132, 1146 (D. Or. 2017) ("Because Oregon's employment discrimination statute was modeled after Title VII, plaintiff's state and federal discrimination claims are analyzed in the same way."); *A.L.P. Inc. v. Bureau of Labor & Indus.*, 984 P.2d 883, 885 (Or. Ct. App. 1999) (recognizing state

---

the even closer connection to the Johnson & Johnson vaccine which uses aborted fetal cell lines in its production and manufacture. *See* N.D. Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/ COVID-19_Vaccine_Fetal_Cell_Handout.pdf; La. Dep't of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 21, 2020), https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf.

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 8

nondiscrimination statute patterned after Title VII). Thus, OHSU's illegal conduct under Title VII also violates Oregon state law.

**D.      The First Amendment to the United States Constitution Protects Publicly Employed Oregon Healthcare Workers.**

In addition to Title VII and cognate state law protections, all healthcare workers in Oregon who are employed by a public entity such as OHSU have protection for the exercise of their sincerely held religious beliefs under the First Amendment to the United States Constitution. It is beyond cavil that government employees do not shed their constitutional rights upon entering government employment. *See Martin v. Lauer*, 686 F.2d 24, 31(D.C. Cir. 1982) ("government employees do not shed their first amendment rights on assuming public responsibilities" (emphasis added)). Indeed, "people do not give up their free-exercise or free-speech rights when they become government employees." *Warnock v. Archer*, 380 F.3d 1076, 1082 (8th Cir. 2004) (emphasis added). *See also Bd. of Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr*, 518 U.S. 668, 675 (1996) ("The First Amendment's guarantee . . . protects government employees."); *Putnam v. Regional Sch. Unit 50*, No. 1:14-cv-154-JAW, 2015 WL 5440783, *14 (D. Me. Sept. 15, 2015) ("This guarantee applied to government employees as well, who should not 'suffer reprisal from a government official . . . because of the possible chilling effect against the free exercise of constitutional rights.'" Quoting *Rosaura Bldg. Corp. v. Mun. of Mayaguez*, 778 F.3d 55, 66 (1st Cir. 2015)).

As the Supreme Court made clear last year, "**even in a pandemic, the Constitution cannot be put away and forgotten.**" *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (emphasis added). Moreover, the Supreme Court has further noted that it will not "abandon the field when government officials with experts in tow seek to infringe a constitutionally protected liberty." *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 718 (2021) (Gorsuch, J.). Indeed, **"[e]ven in times of crisis—perhaps *especially* in times of crisis—we have a duty to hold governments to the Constitution.**" *Id.* (emphasis added).

Every publicly employed healthcare worker in Oregon has the First Amendment right to the free exercise of religion, including whether to accept a forcible injection of a vaccine. OHSU's violates this fundamental right of its employees by denying their legitimate requests for religious accommodation because OHSU cannot carry its burden under strict constitutional scrutiny, requiring OHSU to prove universal, mandatory vaccination is the least restrictive means of achieving its health and safety goals. As shown below, OHSU could easily accommodate all of the small percentage of its employees who have submitted religious exception requests.

**E.      OHSU Can Reasonably Accommodate Its Patient-Facing Employees' Sincerely Held Religious Beliefs Without Undue Hardship.**

"Across OHSU's more than 22,000 members" (Ex. 4), only 465 (2%) submitted a request for religious exception. (*Sept. 28 update*, attached as **Exhibit 6**.) OHSU cannot seriously argue it is unable to accommodate these employees' sincerely held religious objections to COVID-19

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 9

vaccination, even if patient-facing. Large and small healthcare employers in Oregon and across the country are regularly providing religious accommodations to patient-facing employees by allowing them to continue their regular duties and responsibilities while observing enhanced safety protocols—as the entire healthcare system has done for the better part of two years prior to OHSU's arbitrary vaccine mandate.

In a federal lawsuit challenging the State of Maine's prohibition of religious exemptions from the State's COVID-19 vaccine mandate, the plaintiff employees (represented by Liberty Counsel) recently filed **32 sworn declarations** of patient-facing healthcare employees from around the country, including two from Oregon (attached as **Exhibits 7 & 8**), demonstrating the availability and workability of accommodations for patient-facing healthcare workers with sincerely held religious objections to COVID-19 vaccination. (*See* Docs. 57-2 to 57-33, *Does v. Mills*, No. 1:21-cv-00242-JDL (D. Me. Sept. 17, 2021).) For example, a chemotherapy nurse at the Veterans Affairs Medical Center in Portland, Oregon, declared:

> 2)  I am employed as a chemotherapy nurse at the Veterans Affairs ("VA") Medical Center in Portland, Oregon. My hospital is part of the Veterans Health Administration ("VHA").
>
> 3)  The VHA is the largest integrated health care system in the United States, employing more than 367,200 full time health care professionals and support staff, who deliver healthcare services to over 9 million veterans at 1,293 healthcare facilities throughout the United States. (*See* https://www.va.gov/health/aboutvha.asp).
>
> 4)  In Oregon, the VA Portland Healthcare System serves over 95,000 veterans at more than a dozen facilities throughout the state. (*See* https://www.portland.va.gov/about/index.asp).
>
> 5)  The VHA permits and freely grants exemptions and accommodations to healthcare employees with sincerely held religious objections to mandatory vaccinations, including COVID-19 vaccination.
>
> 6)  The VHA form for requesting and obtaining a religious exemption and accommodation from its mandatory COVID-19 vaccination policy is very simple, and requires employees only to check a box indicating that they have a deeply held religious belief that prevents them from receiving the COVID-19 vaccine, and that they have notified their immediate supervisor in writing of that belief. Employees are not required or expected to explain the nature of their religious beliefs, and supervisors are not required to "approve" those beliefs. . . .

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 10

      7)  Once a VHA employee checks the box and completes the exemption form, he or she is automatically exempted from the mandatory vaccination policy, and permitted to continue in the same job function, with the same duties and responsibilities. The only VHA requirement (or accommodation) for exempt employees is that they must wear a face mask . . . .

    . . . .

      10) My exemption and accommodation permit me to continue all of my previous duties and responsibilities, including working on-site, interacting with colleagues, and providing quality and safe care to my patients. As part of my accommodation, I am required to use a mask, as stated in the exemption form. My individual facility is also requiring weekly testing for COVID-19. I comply with all of these requirements.

(Ex. 7; *see also* Ex. 8 (medical professional providing direct support to individuals with disabilities at Shangri-La in Salem, Oregon, who received religious exemption to employer's mandatory COVID-19 vaccination policy along with other employees).). There is no reason why OHSU cannot enact the same policies.

In addition to the attached declarations from Oregon healthcare workers, the declarations filed in the Maine litigation demonstrate similar accommodations granted to patient-facing healthcare workers in Maine, California, Washington, New Mexico, Missouri, Texas, Wisconsin, Minnesota, Illinois, Colorado, Michigan, Ohio, Pennsylvania, Delaware, Maryland, and Florida. (*See* Docs. 57-2 to 57-33, *Does v. Mills*, No. 1:21-cv-00242-JDL (D. Me. Sept. 17, 2021), *available at* https://lc.org/091721MaineHealthCareWorkerReply.pdf.) The healthcare employers granting the accommodations include (a) top education and research hospitals, such as University of Chicago, University of Colorado, University of Maryland, and Temple University, (b) some of the largest healthcare providers in the nation, including the VHA (*see* Ex. 7), Kaiser Permanente, and Trinity Health, having hundreds of thousands of patient-facing employees and accommodating the subset of those with sincere religious beliefs, and (c) mid-sized and smaller healthcare providers also readily accommodating patient-facing personnel with sincere religious beliefs. All 32 of these declarations were obtained on short notice, in a matter of two days. We have since obtained many more. We are confident that, should this matter proceed to litigation, we will have **hundreds** of such declarations available.

Given that numerous employers similarly situated to OHSU have effectively accommodated their patient-facing employees with reasonable safety protocols (e.g., PPE, temperature checks, self-monitoring and reporting of symptoms, testing, etc.), which OHSU's employees are ready and willing to adopt, OHSU will not be able to carry its burden to show that it cannot reasonably accommodate its employees without undue hardship. OHSU cannot show that it is so uniquely situated that it cannot possibly provide its patient-facing employees the same

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 11

### F.    The Federal Emergency Use Authorization Statute Prohibits Mandating Any of the Currently Available COVID-19 Vaccines.

The United States Code provides:

> **[S]ubject to the provisions of this section**, the Secretary (of the Department of Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use").

21 U.S.C. § 360bbb-3(a)(1) (emphasis added) [hereinafter EUA Statute]. As an essential part of the explicit statutory conditions for emergency use authorization (EUA), the EUA Statute mandates that all individuals to whom the EUA product may be administered be given the option to accept or refuse administration of the product**.** *See* 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) (requiring that "individual to whom the product is administered are informed . . . **of the option to accept or refuse administration of the product**" (emphasis added)). The only currently available COVID-19 vaccines (Janssen/Johnson & Johnson, Moderna, and Pfizer-BioNTech) are only authorized for use under the EUA Statute and have no general approval under federal law. Thus, the administration of such vaccines **cannot be mandatory** under the plain text of the EUA Statute.

---

[3]    Furthermore, to the extent OHSU is willing and able to accommodate its patient-facing employees with **medical** exceptions, OHSU's unwillingness to extend the same accommodation to employees with **religious** objections will demonstrate OHSU's religious animus to the court and the jury. If an unvaccinated employee following safety protocols poses any increased risk of transmission at all, which is not conceded, an employee unvaccinated for medical reasons would pose **exactly the same risk** as an employee unvaccinated for religious reasons. Accommodating one and not the other is discrimination. The argument on pages 2–13 of the plaintiffs' brief filed by Liberty Counsel at Doc. 57, *Does v. Mills*, No. 1:21-cv-00242-JDL (D. Me. Sept. 17, 2021), *available at* https://lc.org/091721MaineHealthCareWorkerReply.pdf., addresses a similarly discriminatory policy in the context of a First Amendment claim against a state actor. Moreover, such disparate treatment of similar risks undermines OHSU's already dubious "medical and scientific" justifications (*see* Ex. 3) for universal vaccination, as does the COVID-19 data continually being compiled and analyzed. *See, e.g.*, Sanjay Mishra, *Evidence mounts that people with breakthrough infections can spread Delta easily*, National Geographic (Aug. 20, 2021), https://www.nationalgeographic.com/science/article/evidence-mounts-that-people-with-breakthrough-infections-can-spread-delta-easily; *see also Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR*, CDC, https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html (noting "**the Delta infection resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people**" (emphasis added)).

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 12

The statutorily required Fact Sheets for each of the EUA COVID-19 vaccines acknowledge that individuals cannot be compelled to accept or receive the vaccine. *See* Moderna, *Fact Sheet for Recipients and Caregivers* (June 24, 2021), https://www.fda.gov/media/144638/download ("**It is your choice to receive or not to receive the Moderna COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care**." (emphasis added)); Pfizer-BioNTech, *Fact Sheet for Recipients and Caregivers* (June 25, 2021), https://www.fda.gov/media/144414/download ("**It is your choice to receive or not to receive the Pfizer-BioNTech COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care**." (emphasis added)); Janssen, *Fact Sheet for Recipients and Caregivers* (July 8, 2021), https://www.fda.gov/media/146305/download ("**It is your choice to receive or not to receive the Janssen COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care**." (emphasis added)).

The recent FDA biologics license application (BLA) approval of the product COMIRNATY, COVID-19 Vaccine, mRNA, manufactured by BioNTech Manufacturing GmbH,[4] does not change the EUA status of the Pfizer-BioNTech COVID-19 Vaccine that has been available under EUA since December 23, 2020.[5] According to the EUA extension letter issued by the FDA to Pfizer on August 23, 2021, the Pfizer-BioNTech COVID-19 Vaccine and BioNTech's COMIRNATY, COVID-19 Vaccine, mRNA "are legally distinct" products.[6] Moreover, the now "approved" COMIRNATY vaccine cannot be distributed for use until BioNTech submits "final container samples of the product in final containers together with protocols showing results of all applicable tests" and BioNTech receives "a notification of release from the Director, Center for Biologics Evaluation and Research (CBER)."[7] Thus, it is not clear when (or if) any OHSU employee will have access to the "approved" COMIRNATY vaccine, leaving all (or at least the vast majority of) OHSU employees who may elect to receive the "Pfizer" vaccine pursuant to OHSU's mandatory vaccine policy to receive a dose of the current stock of Pfizer-BioNTech vaccine still being administered subject to EUA rules. Thus, under the EUA Statute, administration of the **currently available** vaccines cannot be mandatory. At any rate, even without the EUA Statute, these employees still have legal rights to religious accommodation under federal and state law.

## LEGAL DEMAND

As shown above, OHSU's denials of the religious exception requests of Employee 1 and others are unlawful. OHSU cannot compel any employee's compliance with OHSU's mandatory COVID-19 vaccination policy against the employee's sincerely held religious beliefs, and cannot single out religious exception requests for disfavored treatment, even as against medical exception

---

[4]   BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA (Aug. 23, 2021), https://www.fda.gov/media/151710/download.

[5]   EUA Extension Letter for Pfizer-BioNTech COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/media/150386/download.

[6]   *See* EUA Extension Letter, *supra* note 5, at 2 n.8.

[7]   *See* BLA Approval Letter, *supra* note 4, at 2.

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 13

requests. Moreover, it is unlawful for OHSU to deny any employee's request for religious accommodation based on OHSU's arbitrary decree or the religious beliefs of any other person or organization, or on the employee's past personal health decisions, whatever the employee's theological reasons for those decisions.

Liberty Counsel prefers to avoid the need for further legal action, and trusts that the points and authorities presented in this letter demonstrate to OHSU that its pretextual and discriminatory denials of its employees' requests for religious accommodation are unlawful. Should OHSU continue its unlawful denials, however, Liberty Counsel will be forced to conclude that OHSU is disregarding its obligations to provide accommodations to employees with sincerely held religious objections to the COVID-19 vaccines in violation of both federal and state law.

**Liberty Counsel is giving OHSU the opportunity to grant the religious exception request of Employee 1 without litigation. To avoid litigation, OHSU must provide, prior to Thursday, October 14, at 5:00 P.M., OHSU's assurances that:**

1) **OHSU has granted the religious exception request of Employee 1 and halted any HR process which could result in adverse employment action, and notified her of same;**

2) **OHSU will not deny (and will reverse any prior denial of) any religious exception request where the request is based on an employee's sincere religious objection to receiving the COVID-19 vaccines developed, tested, produced, or otherwise connected to aborted fetal cell lines or from receiving any of the COVID-19 vaccines if such act conflicts with any other sincerely held religious belief, such as belief;**

3) **OHSU will not deny (and will reverse any prior denial of) any religious exception request where the request is based on an employee's objection to receiving the COVID-19 vaccines based on sincerely held religious beliefs about bodily integrity or sanctity, or any other sincerely held religious belief characterized by OHSU as "personal moral choices and/or conscientious objections;"**

4) **OHSU will not deny (and will reverse any prior denial of) any religious exception request based on the absence of approval or acknowledgement of the employee's religious beliefs by a third party;**

5) **OHSU will not deny (and will reverse any prior denial of) any religious exception request based on any stated or perceived different beliefs by any religious denomination, organization, or leader;**

6) **OHSU will not deny (and will reverse any prior denial of) any religious exception request based on evaluation criteria less favorable to religious exception requests than to medical or any other category of exception allowed by OHSU;**

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 14

7)  **OHSU will not deny (and will reverse any prior denial of) any religious exception request based on an employee's past vaccination or other health decisions or the employee's theological reasons for those decisions; and**

8)  **OHSU will not deny any religious exception request without providing specific reasons for the denial and an opportunity for appeal or reconsideration, and will provide specific reasons for denial and an opportunity for appeal or reconsideration at the request of any previously denied employee.**

**OHSU's failure to respond positively or timely, or OHSU's taking of any adverse or retaliatory action against Employee 1 (or further adverse or retaliatory action against Employee 1), or any other employee who has requested religious accommodation, will indicate to Liberty Counsel that OHSU will not comply with its legal obligations against discrimination without judicial intervention. In that event, we will proceed directly with litigation to vindicate the legal rights of Employee 1 and other OHSU employees, without further warning.**

## EVIDENCE PRESERVATION DEMAND

In connection with the foregoing Legal Demand, Liberty Counsel also demands that OHSU preserve all records, data, documents, devices, and things in its possession or the possession of its employees, including private wireless phones and devices and records and data found thereon, from January 1, 2020 to the present (and continuing), constituting, reflecting, or reasonably related to the following:

1.  The conception, formation, membership, staff, volunteers, administration, policies, guidelines, communications, analyses, opinions, deliberations, decisions, meetings, and other official or unofficial actions of the OHSU Vaccine Exception Review Panel, including without limitation the "narrow criteria for approving medical or religious exceptions" shared with OHSU employees, students, and other members on September 22, 2021 and any amendments or revisions thereto (*see* Exs. 1, 3, 4);

2.  All requests for exception from receiving a COVID-19 vaccine submitted to the Vaccine Exception Review Panel or any other person or persons employed by or under the direction and control of OHSU, from Employee 1 or any other OHSU employee, and all communications, analyses, opinions, deliberations, decisions, meetings, and other official or unofficial actions of the Vaccine Exception Review Panel or such other person or persons concerning such exception or accommodation requests; and

3.  Any training received by any Vaccine Exception Review Panel member, consultant, employee, or volunteer, or any other OHSU employee, consultant, volunteer, or board member regarding the conception, enactment, and

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 15

administration of OHSU's mandatory COVID 19 vaccination policy, including without limitation the review, consideration, and disposition of requests for religious or medical exception or accommodation from the policy.

The records, data, and documents subject to this demand include all paper and other physical files and all electronically stored information (ESI), including but not limited to e-mail, text, SMS, MMS, social media, and other electronic communications, whether maintained on a personal or business device or account, including on personal wireless devices, personal e-mail accounts, and personal social media accounts; and further including without limitation word processing documents, spreadsheets, databases, calendars, telephone logs, contact information, usage files, and access information from networks, databases, computer systems (including legacy systems, hardware, and software), servers, archives, backup or disaster recovery systems, tapes, discs, drives, cartridges, and other storage media, laptops, personal computers, tablets, digital assistants, handheld wireless devices, mobile telephones, paging devices, and audio systems (including voicemail).

Liberty Counsel expects OHSU to preserve records, data, documents, devices, and things from January 1, 2020, to the present (and continuing) in OHSU's possession and in the possession of any third party under its control. If OHSU knows or reasonably determines that any older records, data, documents, devices, or things are potentially relevant, however, OHSU should preserve such materials from the relevant earlier period as well.

ESI is an important and irreplaceable source of evidence in connection with this matter. Liberty Counsel cautions OHSU that this preservation demand should be afforded the broadest possible interpretation with respect to ESI, and that responsive ESI can reside not only in areas that are reasonably accessible but also in areas that OHSU may deem not reasonably accessible. Liberty Counsel demands that OHSU preserve all responsive ESI, even if OHSU does not anticipate an obligation to produce such ESI in future litigation.

Preservation of ESI may require more than simply refraining from efforts to destroy or dispose of such evidence. OHSU may have to affirmatively intervene in automatic processes to prevent data loss due to routine operation and overwriting. For instance, sources of ESI can be altered and erased simply through continued use of a computer or other device. Booting a drive, examining its contents, or running any application can irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. OHSU should take care to employ proper techniques and protocols, hiring an expert to assist if necessary.

OHSU should be aware that employees or others may seek to hide, destroy, or alter ESI, and OHSU must act to prevent or guard against such actions. Users may seek to delete or destroy information they regard as personal, confidential, or embarrassing and, in so doing, may also delete or destroy responsive ESI. Though Liberty Counsel expects OHSU will act swiftly to preserve data on office workstations and servers, OHSU should also determine whether any home or portable systems contain potentially responsive ESI. OHSU must preserve the contents of the systems, devices, and media used for those purposes as well.

Unlawful Denials of Religious Exceptions
October 11, 2021
Page 16

       I am available to discuss reasonable preservation steps; however, OHSU should not delay in taking proper precautions to preserve relevant records, data, documents, and things if they may be lost or corrupted as a consequence of delay. Should OHSU's failure to preserve potentially relevant evidence result in the corruption, loss, or delay in production to which Employee 1 or any other employee may later be entitled, such failure would constitute spoliation of evidence, for which sanctions may be imposed.

       Please govern yourselves accordingly.

Very truly yours,

Roger K. Gannam[†]
Asst. Vice President of Legal Affairs
LIBERTY COUNSEL

c:  Benjamin Boyd, Esq.[‡]
    Local Counsel
    ben@hostetterlawgroup.com

    Matt McNair
    President, OHSU Foundation
    mcnairm@ohsu.edu

---

[†] Licensed in Florida
[‡] Licensed in Oregon.